1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARSHINI NARAMBATLA, et al.,

              Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

              Defendant.

CASE NO. 2:23-cv-01275

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS (DKT. # 13)

# I

## INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss Pursuant to Fed.
R. Civ. P. 12(b)(1) and 12(b)(6). *See* Dkt. # 13. Plaintiffs are noncitizens[1] who reside in the
United States and whose immigration petitions were revoked by Defendant United States
Department of Homeland Security (DHS). DHS seeks dismissal, arguing that Plaintiffs lack

---

[1] The Court uses the term "noncitizen" as equivalent to the statutory term "alien." *See*, *e.g.*,
*Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 1

1

2    standing to assert their claim.[2]  *See* Dkt. ## 13, 19.  Plaintiffs' alleged injuries are cognizable,

3    fairly traceable to DHS, and a favorable decision from the Court is likely to redress the alleged

4    injuries.  The Court GRANTS in part and DENIES in part the motion.  *See* Dkt. # 13.

5

6                                                **II**
                                           **BACKGROUND**

7

8          The Immigration Act of 1990 created the H-1B visa, which allows an employer in the

9    United States to hire a noncitizen to fill a "specialty occupation" based on a "petition of the

10   importing employer."  *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(B), 1184(c)(1).  Employers must show

11   that (1) the job they wish to fill requires a highly specialized body of knowledge and a bachelor's

12   or higher degree in a specific specialty, and that (2) the prospective employee has this requisite

     degree and knowledge.  8 U.S.C. § 1184(g), (i).

13
           There is a limit to the number of H-1B petitions considered by United States Citizenship
14
     and Immigration Services (USCIS)[3] per year, with a statutory "cap" of 65,000 visas and an
15
     additional 20,000 for noncitizens who have earned a master's or higher degree from a United
16
     States institution of higher learning, totaling a per year allocation of 85,000 H-1B visas or grants
17
     of status.  *See* 8 U.S.C. § 1184(g).  Because the demand for H-1B status exceeds the statutory
18

19        _____

20          [2] As discussed below, during the course of briefing, Plaintiffs conceded that their first three
     causes of action are now "moot."  Dkt. # 18 at 7.  DHS responds that "mootness is not the appropriate
     framework for viewing these claims because there never was a live case or controversy here."  Dkt. # 19
21   at 6.  Despite the disagreement, because the parties agree that these three claims should be dismissed, this
     order does so and provides analysis about only the one remaining claim.
22          [3] The Homeland Security Act of 2002 made DHS a parent agency of USCIS.  *See* 6 U.S.C § 101,
     *et seq.*  Both agencies have the authority to adjudicate and label a noncitizen as inadmissible and construe
23   statutory grounds of inadmissibility.  8 U.S.C. § 1182(a).  The parties do not dispute that the acts of
     USCIS are imputed to its parent agency DHS.
     ORDER GRANTING IN PART AND DENYING IN
24   PART MOTION TO DISMISS (DKT. # 13) - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

cap, DHS regulations provide rules for the administration of the H-1B cap selection process, commonly known as the "lottery." *See* 8 C.F.R. § 214.2(h)(8)(iii); Dkt. # 13-1 at 2 ¶ 4.  An employer petitioner must first register for the H-1B cap lottery and be selected and given a "cap number" for a beneficiary-employee, before they are eligible to submit a Form I-129 (Petition for Nonimmigrant Worker) to USCIS on behalf of the beneficiary.  8 C.F.R. § 214.2(h)(8)(iii).

In the Form I-129, petitioning employers must show that they are eligible for the requested benefit at the time of filing and must remain eligible through adjudication.  8 C.F.R. 103.2(b)(8).  "USCIS will approve the request only if the evidence of record establishes both eligibility" and that the "petitioner or applicant warrants a favorable exercise of discretion." *Id.* USCIS may make a "request for evidence" or issue "a notice of intent to deny" to the "applicant or petitioner[.]" 8 C.F.R. 103.2(b)(8)(iv).  Such a notice "will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." *Id.*  USCIS may deny a benefit request when an applicant or petitioner's responsive evidence does not establish eligibility.  8 C.F.R. 103.2(b)(12).  If the petitioner or applicant fails to respond to a request for evidence or notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned or based on the record. 8 C.F.R. § 103.2(b)(13).

USCIS may also send a notice of intent to revoke (NOIR) to a petitioner if it finds the application contains fraud or misrepresents a material fact.   8 C.F.R. § 214.2(h)(11)(iii)(A)(2). The notice must contain a detailed statement of the grounds for revocation and a time period that allows for the petitioner's rebuttal.  8 C.F.R. § 214.2(h)(11)(iii)(B).

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 3

1
2

> If USCIS believes that related entities (such as a parent company, subsidiary, or affiliate) may not have a legitimate business need to file more than one H-1B petition on behalf of the same [noncitizen] . . . USCIS may issue a request for additional evidence or notice of intent to deny, or notice of intent to revoke each petition.  If any of the related entities fail to demonstrate a legitimate business need to file an H-1B petition on behalf of the same [noncitizen], all petitions filed on that [noncitizen's] behalf by the related entities will be denied or revoked.

3
4
5

8 C.F.R. § 214.2(h)(2)(i)(G).

6
7

The employer may submit evidence in rebuttal within 30 days of receipt of the notice.  8

8

C.F.R. § 214.2(h)(11)(iii)(B).  The denial or revocation of a petition may be appealed, but an

9

automatic revocation may not be appealed.  8 C.F.R. § 214.2(h)(12).  Once a petition is revoked,

10

the visa and cap number are also revoked.  *See* 8 U.S.C. § 1184(g)(3).

11

Plaintiffs are 10 citizens of India who reside in the United States.  Dkt. # 8 at 2–3 ¶¶ 1–

12

10.  They allege that they were beneficiaries of H-1B visa petitions submitted on their behalf by

13

different petitioning employers.  *Id.* at 19–29 ¶¶ 109–218.  Plaintiffs allege that the H-1B

14

petitions submitted on their behalf were approved and visas were issued to them; Plaintiffs say

15

that after these visa approvals, USCIS sent each petitioning employer a NOIR[4] as to the H-1B

16

petition, citing fraud or misrepresentation by the employer.  *Id.*  According to Plaintiffs, none of

17

the petitioning employers responded to the NOIRs except for employer PRN IT associated with

18

Plaintiff Narambatla, who responded to the NOIR but did not overcome revocation.  *Id.* at 20 ¶

19

118. Plaintiffs allege that no other petitioning employer responded to the NOIRs related to the

20
21
22
23
24

---

[4] The amended complaint states that USCIS issued NOIRs to eight of the 10 petitioning employers but does not specify whether USCIS issued NOIRs to the employers petitioning on behalf of Plaintiffs Kondaveeti and Bhanushali.  *See* Dkt. # 8 at 19–29.  The parties do not address these fact issues, which the Court need not analyze here.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 4

1

2    remaining Plaintiffs.[5]  Plaintiffs say that they were not given notice or an opportunity to respond

3    to the NOIRs and USCIS "should have confronted them with derogatory information and

4    allowed Plaintiffs to raise arguments and present facts regarding the provenance of the cap

5    number revocation."  *Id.* at 36 ¶¶ 261–63.

6         The amended complaint brings four causes of action under the Administrative Procedure

7    Act (APA).  *Id.* at 29–36 ¶¶ 219–65.  Yet after USCIS officer, Sharon Orise, provided a

8    declaration that DHS does not consider Plaintiffs to be inadmissible under Section

9    212(a)(6)(C)(i) of the Immigration and Nationality Act, *see* Dkt. # 13-1, Plaintiffs conceded that

10   the first three causes of action should be dismissed.  Dkt. # 18 at 7.  This leaves just one cause of

11   action for the Court's consideration: that DHS violated the APA because it "arbitrarily,

12   capriciously and unlawfully revoked Plaintiffs' protected H-1B cap numbers under 8 U.S.C. §

13   1184(n)(1)."  Dkt. # 8 at 35–36 ¶¶ 256–65.  DHS says that Plaintiffs lack standing to bring this

14   claim.  *See* Dkt. # 13 at 12–25; Dkt. # 19 at 6–8.

15

16                                        **III**

                                      **DISCUSSION**

17

     A.    Rule 12(b)(1)
18
           Federal Rule of Civil Procedure 12(b)(1) applies to a motion to dismiss for lack of
19
     subject matter jurisdiction.  The party invoking federal jurisdiction bears the burden of proving
20
     it.  *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990).  A defendant contesting jurisdiction may
21

22        _____
          [5] USCIS clarifies that, according to its records, employer Knoviq IT Solutions, LLC also
23   responded to a NOIR related to the petition it submitted for Plaintiff Oleti, but Knoviq IT's response did
     not overcome revocation.  Dkt. # 13 at 14 n.3.
     ORDER GRANTING IN PART AND DENYING IN
24   PART MOTION TO DISMISS (DKT. # 13) - 5

1

2   do so through a "facial attack," which accepts the truth of the plaintiff's allegations but asserts

3   that they are "insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749

4   F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039

5   (9th Cir.2004)).  A court resolves a facial attack as it would a motion to dismiss under Federal

6   Rule of Civil Procedure 12(b)(6), by "[a]ccepting the plaintiff's allegations as true and drawing

7   all reasonable inferences in the plaintiff's favor[.]" *Id.*  The court must then determine "whether

8   the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride*

9   *v. Correa,* 719 F.3d 1130, 1133 (9th Cir. 2013)).

10   B.     Standing

11          "Article III of the Constitution confines the federal courts to adjudicating actual 'cases'

12   and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The "most important" Article

13   III doctrine requires that a litigant have standing to invoke the power of the federal court. *Id.*  To

14   establish Article III standing, the burden rests on the plaintiff to "clearly allege facts

15   demonstrating" that she "(1) suffered an injury in fact, (2) that is fairly traceable to the

16   challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

17   decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To survive a motion to dismiss, a

18   plaintiff must allege "specific facts plausibly explaining" each of the standing requirements.

19   *Barnum Timber Co. v. U.S. Env't Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).

20          DHS contends that Plaintiffs lack standing, and thus the Court lacks subject-matter

21   jurisdiction, because Plaintiffs' alleged injuries are not fairly traceable to DHS and cannot be

22   redressed by a favorable decision of this Court.  Dkt. # 13 at 21.  Plaintiffs respond that they

23   have been injured by the "lack of notice and meaningful opportunity to respond to DHS's

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 6

attempt to take their H-1B cap numbers" and the "loss of [their] H-1B status."  Dkt. # 18 at 18–19.

      1.     Elements one and two: Injury fairly traceable to DHS

"To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  A plaintiff must also allege that these injuries are "fairly traceable" to a defendant's conduct and "not the result of the independent action of some third party not before the court."  *Winsor v. Sequoia Benefits & Ins. Servs.*, LLC, 62 F.4th 517, 525 (9th Cir. 2023) (quoting *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020)).

DHS contends that Plaintiffs have not pleaded a cognizable injury that is fairly traceable to DHS action because USCIS issued NOIRs to the petitioning employers and later made adverse findings against the employers, not Plaintiffs.  Dkt. # 13 at 21–22; Dkt. # 13-1 at 5 ¶ 12. According to DHS, USCIS revoked Plaintiffs' employers' H-1B cap petition approvals and cap numbers after the petitioning employers failed to respond to the NOIRs or failed to respond with sufficient information to overcome the grounds for revocation.  Dkt. # 13 at 21–22.  DHS states that the basis for these revocations was that the petitioning employers, not the beneficiaries, included "statement of facts in the application [that were] not true and correct, [] inaccurate, fraudulent, or misrepresented a material fact."  *Id.* at 22; Dkt. # 13-1 at 4 ¶ 9; 8 C.F.R. 214.2(h)(11)(iii)(A)(ii).

DHS says that USCIS determined that each petitioning employer "conspired with other companies having joint ownership and/or management or other factors evidencing they were

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 7

working together, to submit multiple H-1B registrations on behalf of each Plaintiff, to increase the odds that [the] registration submitted for the Plaintiffs would be selected in the lottery, all to the detriment of other registrants and beneficiaries who were playing by the rules." Dkt. # 13 at 22; Dkt. # 13-1 at 4 ¶ 9. DHS states that when USCIS discovered that the petitioning employers had worked with other entities to submit multiple registrations for the same participant, USCIS treated the registration as improperly submitted and designated that petitioning employer as ineligible to submit a petition based on that registration. Dkt. # 13 at 23.

Plaintiffs respond that they "have established standing through two distinct injuries." Dkt. # 18 at 18. They say that the first injury is their lack of notice and meaningful opportunity to respond to the NOIRs because the "lost opportunity is itself a concrete injury[.]" *Id.* at 18–19 (quoting *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 638 (6th Cir. 2013)). Plaintiffs contend that the "APA provides a right of an interested party to receive notice of an adjudication." *Id.* at 19 (citing 5 U.S.C. § 554(b)). Plaintiffs conclude that DHS "must also provide the individual [beneficiary] with notice of adverse final agency actions." *Id.* at 19 (5 U.S.C. § 555(e)).

Plaintiffs claim that their second injury is USCIS's revocation of the H-1B cap numbers previously allocated to them, contending that the loss of H-1B status is itself a cognizable injury. *Id.* at 19 (citing *Stellar IT Sols., Inc. v. U.S. Citizenship & Immigr. Servs.*, No. CV 18-2015 (RC), 2018 WL 6047413, at *5 (D.D.C. Nov. 19, 2018)).

According to Plaintiffs, their injuries are traceable to DHS action because

lawful immigration status and employment depended on maintaining their cap numbers. The prior employers were under no legal obligation to inform Plaintiffs of the agency action revoking their cap numbers. Thus, the unnoticed agency action

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 8

made Plaintiffs vulnerable to accumulating unlawful status and unauthorized employment.  . . .  The agency's procedural errors foreclosed any opportunity for Plaintiffs to raise legal issues and for Defendant to articulate its position on the question of law.

Dkt. # 18 at 20.

DHS replies that USCIS did not have a duty to provide notice to the beneficiaries of its revocation of the employers' petitions and of their cap numbers.  Dkt. # 19 at 6 (citing 8 C.F.R. § 214.2(h)(9)(i), (h)(10)(ii), (h)(11), 8 C.F.R. § 103.2(b)(19); 8 C.F.R. §§ 103.2(a)(3), 103.3(a)(1)(iii)(B)).  According to DHS, no adverse finding was made against Plaintiffs and "there is nothing preventing [them] from being the beneficiaries of future H-1B registrations or subsequently filed H-1B petitions . . . in the future."  Dkt. # 19 at 7.

The Ninth Circuit has held that beneficiaries seeking equitable relief regarding agency denial of immigrant visas suffered a cognizable injury in fact to satisfy Article III standing.  *See, e.g.*, *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998), *superseded on other grounds by statute* (beneficiary "lost a significant opportunity to receive an immigrant visa" when the agency denied a petition submitted on his behalf" and "[t]his lost opportunity represent[ed] a concrete injury to Abboud that [was] traceable to the [agency's] conduct and remediable by a favorable decision in this case"); *Hsiao v. Scalia*, 821 F. App'x 680, 683–4 (9th Cir. 2020) (beneficiary "lost a significant opportunity to proceed in the three-step immigration process when the DOL denied the application that was filed on her behalf as the beneficiary").  While the Ninth Circuit has not yet held that a *nonimmigrant* beneficiary has Article III standing in this context, the Court does not see

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 9

how this distinction makes a legal difference on the question of Article III standing.  *See*

*Tenrec, Inc. v. U.S. Citizenship and Immigrs. Servs.*, No. 3:16-cv-995-SI, 2016 WL

5346095, *4–5 (D. Or. Sep. 22, 20216) ("The Ninth Circuit has found Article III standing

for immigrant visa petition beneficiaries, but has not yet ruled on whether beneficiaries

for nonimmigrant visa petitions have Article III standing.  The Court finds more

applicable and persuasive the reasoning of cases showing that visa petition beneficiaries

have standing.").

　　　In addition, at least three circuit courts have held that the lack of notice to a beneficiary

about agency revocation of an immigrant petition constitutes an injury that is fairly traceable to

the agency itself.  *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) ("Mantena pled an

injury-in-fact that would be traceable to failed notice.  The revocation of Mantena's employer's I–

140 petition (and subsequent automatic denial of her I–485 application) ended Mantena's

multiyear attempt to secure a green card."); *Kurapati v. U.S. Bureau of Citizenship & Immigr.*

*Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014) ("Under the test for constitutional standing

[plaintiffs] suffered an injury-in-fact from USCIS's revocation of the I–140 visa petitions—

namely, the deprivation of an opportunity to apply for adjustment of status—which is fairly

traceable to USCIS and would be redressable by a favorable decision."); *Patel*, 732 F.3d at 637–

38 (plaintiff alleged a cognizable injury in fact because he "lost a significant opportunity to

receive an immigrant visa" when the agency denied his employer's petition "on grounds that

[plaintiff said] were arbitrary"); *Musunuru v Lynch, et al.*, 831 F.3d 880, 882 n.1 (7th Cir. 2016).

　　　Here, as in *Mantena*, *Kurapati*, and *Patel*, Plaintiffs' loss of H-1B status and their lack of

notice in the NOIR process are cognizable injuries that are concrete, particularized, and traceable

to DHS's revocation of their legal nonimmigrant status.  *See Stellar IT*, 2018 WL 6047413, at *5

("Though [plaintiff] was merely the beneficiary of the H-1B petition that [his employer] filed on

his behalf, he has standing to bring a judicial challenge to USCIS's denial of the petition.  He has

suffered an injury-in-fact—the loss of his legal nonimmigrant status—that is traceable to

USCIS's denial of the petition and redressable by a favorable ruling in this Court."); *Rossville*

*Convenience & Gas, Inc. v. Garland*, No. 20-2218-JDB, 2021 WL 5865446, *7 (D.D.C. Dec. 12,

2021); *Khedkar v. U.S. Citizenship and Immigr. Servs.*, 552 F. Supp. 3d 1, *9 (D.D.C. 2021).

Although USCIS also contests the causation element of the standing analysis by

suggesting that the beneficiaries' injuries stem from the fraudulent actions taken by the

petitioning employers and from the USCIS revocations, *see* Dkt. # 19 at 7, this consideration is

irrelevant to the Article III standing analysis at hand.  While DHS contends that the real harm

comes from the petitioning employers' lack of response to the NOIRs or inability to overcome

the revocation allegations, *see* Dkt. # 13 at 21–22; Dkt. # 19 at 8, the Court notes that Plaintiffs'

alleged injuries—their lack of participation in the NOIR process and loss of legal status—would

not have occurred *but for* DHS's revocation.  The Court concludes that Plaintiffs' lack of notice

in revocation proceedings and loss of an opportunity to receive a nonimmigrant visa is an injury

in fact that is fairly traceable to DHS.  *See Patel*, 732 F.3d at 638; *see also Shalom Pentecostal*

*Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 162 (3d Cir. 2015) (the

beneficiary of immigrant petition, Form I-360, demonstrated an injury in fact when he lost a

significant opportunity to receive an immigrant visa).

2.      Element three: Redressability

To establish redressability, a plaintiff must allege that it is "likely, as opposed to merely speculative," that a favorable decision will redress the alleged injuries.  *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

DHS says that Plaintiffs' injuries are not redressable.  Dkt. # 13 at 24–25; Dkt. # 18 at 7–8.  According to DHS:

> the only way [Plaintiffs'] visas and cap numbers can be restored is if the underlying petitions are reopened and approved, because issuance of a visa and cap number requires an approved petition.  8 U.S.C. 1184(c)(1) ("petition shall be made and approved before the visa is granted").  Plaintiffs do not challenge the revocation of the H-1B cap petition approvals or the findings of fraud or misrepresentation underlying those revocations.  Thus, the injury Plaintiffs allege—loss of their H-1B cap numbers—is not likely to be redressed by a favorable decision from this court because USCIS revoked the underlying petitions.

Dkt. # 13 at 25 (citing cases).

Plaintiffs respond that "restoring [their] cap-number, lawful presence, and admissibility will redress [DHS's] actions."  Dkt. # 18 at 20.  According to Plaintiffs, "redress need not require the Court to restore the original petition in perpetuity"; instead Plaintiffs ask that the Court vacate the "cap number revocations, pending a new NOIR" to allow them "to understand their rights to remain the United States and change to a different nonimmigrant status if necessary."  *Id.* at 20–21.

The Court concludes that Plaintiffs have pleaded a redressable injury in fact.  They allege two injuries: (1) the lack of notice from USCIS about their revocation proceedings and (2) the loss of their nonimmigrant visa status.  *See id.* at 18–20.  Plaintiffs do not challenge the basis for

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 12

their revocations but challenge their lack of notice and participation in the NOIR process, alleging that DHS's was actions were unlawful, arbitrary, and capricious and violated the APA. Dkt. # 8 at 36 ¶ 265.

At the pleading stage, Plaintiffs need only allege "specific facts plausibly explaining" each of the standing requirements. *Barnum*, 633 F.3d at 899. The APA allows the Court to "compel agency action unlawfully withheld or unreasonably delayed" and may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706. The issue at hand is whether the Court can redress the injuries for purposes of standing and the Court makes no determination on the merits of Plaintiffs' claims. *See Tenrec*, 2016 WL 5346095 at *11 n.8 ("The Court makes no determination regarding the merits of Plaintiffs' claims. Redressability considers whether a court order can redress the plaintiffs' claims for purposes of standing and not whether the plaintiffs have stated a claim or will prevail on those claims on the merits."). Because the APA may provide a judicial remedy for Plaintiffs' alleged injuries, Plaintiffs' alleged harm is redressable. *See Patel*, 732 F.3d at 638; *Kurapati*, 775 F.3d at 1260; *Parcha v. Cuccinelli*, No. 4:20-CV-015-SDJ, 2020 WL 607103, at *4 (E.D. Tex. Feb. 7, 2020).[6]

---

[6] Plaintiffs also contend that they are within the "zone of interests" of the statute in question and have prudential standing. Dkt. # 18 at 21 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126-27 (2014); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012)). Because DHS does oppose this position, the Court shall not address it here. *See* Dkt. # 19 at 8.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS (DKT. # 13) - 13

1

2

3
                                **IV**

4
                         **CONCLUSION**

5
      For the reasons stated above, the Court GRANTS in part and DENIES in part the motion

6
to dismiss.  The Court DISMISSES Plaintiffs' first three causes of action with prejudice.  *See*

7
Dkt. # 8 at 29–34 ¶¶ 219–55.  But the Court concludes that Plaintiffs' have Article III standing to

8
bring their remaining claim.  *See* Dkt. # 13 at 35–36 ¶¶ 256–65.

9
      Dated this 17th day of April, 2024.

10

11
                                   John H. Chun
                                   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24