UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARSHINI NARAMBATLA, *et al.*, | CASE NO. 2:23-cv-01275-JHC |
| Plaintiffs, | ORDER |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| Defendant. | |

# I

## INTRODUCTION

This immigration matter comes before the Court on the parties' cross-motions for summary judgment. Dkts. # 37, 40. Plaintiffs are noncitizens[1] who reside in the United States and whose H-1B visas and corresponding "cap numbers" were revoked by Defendant United States Department of Homeland Security (DHS).[2] *See generally* Dkts. ## 26–36. Plaintiffs sued

---

[1] The Court uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] The Homeland Security Act of 2002 made DHS a parent agency of USCIS. *See* 6 U.S.C § 101, *et seq*. Both agencies have the authority to adjudicate and designate a noncitizen as inadmissible and construe statutory grounds of inadmissibility. 8 U.S.C. § 1182(a). The parties do not dispute that the acts of USCIS are imputed to its parent agency DHS. And the parties' briefing ascribes USCIS's actions to DHS. *See* Dkts. # 37, 40.

ORDER - 1

DHS, contending that the agency violated the Administrative Procedure Act (APA).  Dkt. # 8.  Both parties have moved for summary judgment as to Plaintiffs' sole remaining claim.[3]  Dkts. # 37, 40.  The Court has reviewed the materials filed in support of and in opposition to the motions, the record, and the applicable law.  Being fully advised, for the reasons below, the Court DENIES Plaintiffs' motion for summary judgment, GRANTS DHS's cross-motion for summary judgment, and DISMISSES this matter with prejudice.

## II
### BACKGROUND

The Immigration Act of 1990 provides for the H-1B visa, which allows an employer in the United States to hire a noncitizen to fill a "specialty occupation" based on a "petition of the importing employer."  *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(B), 1184(c)(1).  Noncitizens seeking employment in the United States cannot apply directly for H-1B visas.  *See* 8 U.S.C. § 1184(c)(1).  Instead, a U.S. employer agrees to hire a noncitizen and then applies for an H-1B visa on their behalf.  *Id.*  Employers must show that (1) the job they wish to fill requires a highly specialized body of knowledge and a bachelor's or higher degree in a specific specialty, and (2) the prospective employee has this requisite degree and knowledge.  8 U.S.C. §§ 1184(g), (i).

The United States Citizenship and Immigration Services (USCIS) considers a limited number of H-1B visas each year, with a statutory "cap" of 65,000 visas and another 20,000 visas for noncitizens who have earned a master's or higher degree from a United States institution of higher learning, totaling a per year allocation of 85,000 H-1B visas or grants of status.  *See* 8 U.S.C. § 1184(g).  Because the demand for H-1B status far exceeds the statutory cap, DHS

---

[3] In its Order resolving DHS's Motion to Dismiss, the Court dismissed Plaintiffs' other claims with prejudice.  *See* Dkt. # 20 at 14.

regulations provide rules for the administration of the H-1B cap selection process, commonly known as the visa "lottery." *See* 8 C.F.R. § 214.2(h)(8)(iii).

An employer-petitioner must first register for the H-1B lottery, then be randomly selected from the lottery, and given a "cap number" for the beneficiary-employee. Once the employee has a cap number, the employer can submit a Form I-129 (Petition for Nonimmigrant Worker) on behalf of the employee. 8 C.F.R. § 214.2(h)(8)(iii). The petition must adhere to the requirements listed in 8 C.F.R. § 214.2(h)(4)(iii)(B). USCIS then notifies the employer of its decision. *See* 8 C.F.R. §§ 214.2(h)(9)(i), (h)(10)(ii), (h)(11). USCIS informs the employer when it approves, denies, intends to revoke, or revokes the H-1B petition. *Id.* USCIS sends a notice of intent to revoke (NOIR) to the employer if, among other things, the agency determines that the H-1B petition is fraudulent or misrepresented material facts. 8 C.F.R. § 214.2(h)(11)(iii)(A)(2). Specifically, the regulation provides:

> If USCIS believes that related entities (such as a parent company, subsidiary, or affiliate) may not have a legitimate business need to file more than one H-1B petition on behalf of the same [noncitizen] . . . USCIS may issue a request for additional evidence or notice of intent to deny, or notice of intent to revoke each petition. If any of the related entities fail to demonstrate a legitimate business need to file an H-1B petition on behalf of the same [noncitizen], all petitions filed on that [noncitizen's] behalf by the related entities will be denied or revoked.

8 C.F.R. § 214.2(h)(2)(i)(G). The NOIR must contain a detailed statement of the grounds for revocation and include the time allowed for the petitioner's rebuttal. 8 C.F.R. § 214.2(h)(11)(iii)(B). The denial or revocation of an H-1B petition may be appealed, but an automatic revocation may not be appealed. 8 C.F.R. § 214.2(h)(12).

Further, 8 U.S.C. Section 1184(g)(3), states that a noncitizen

> who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) *is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of [noncitizens] who may be issued visas* or

ORDER - 3

> otherwise provided such status under the numerical limitations of paragraph (1) in the fiscal year in which the petition is revoked, regardless of the fiscal year in which the petition was approved.

8 U.S.C. § 1184(g)(3) (emphasis added). Meaning that a noncitizen beneficiary of an H-1B visa obtained by fraud or willful misrepresentation will lose their visa and cap number. *Id.* Once a noncitizen loses their cap number, an employer would need to go through the H-1B lottery process again in a new fiscal year. *Id.* If the H-1B registration is randomly selected in the lottery, the noncitizen would then receive a new cap number. *Id.*

Plaintiffs Harshini Narambatla, Ashutosh Dubey, Aakash Hiralal Kapadia, Chandramohan Oleti, Karan Amit Sanghavi, Shriya Sadana, Param Urjitbhai Shah, Abhinav Mahesh Aralekar, Darshan Ramesh Bhanushali, and Sai Kalyan Kartheek Kondaveeti are citizens of India residing in the United States. *See generally* Dkts. ## 26–36. Plaintiffs' employers submitted H-1B visa petitions on their behalf. *Id.* USCIS approved the petitions and issued H-1B visas to Plaintiffs. *Id.* Following the approvals, USCIS sent Plaintiffs' employers NOIRs, stating that the employers had committed fraud or made misrepresentations during the visa registration process. *Id.* For example, USCIS sent a NOIR to Plaintiff Narambatla's employer, PRN IT Corp Inc., stating that PRN IT had worked with other companies to "unfairly increase their chances of selection for [Narambatla]." Dkt. # 32-1 at 181. USCIS identified multiple cap registrations filed on Narambatla's behalf by other "related" companies. *Id.* The agency determined that "the multiple cap registrations submitted by these companies for [Narambatla] contain a willful misrepresentation of a material fact made to a USCIS official with the intent to deceive for the purposes of obtaining an immigration benefit." *Id.* USCIS also sent NOIRs to the employers of the other Plaintiffs. *See* Dkts. ## 26–36. USCIS determined that those employers also unfairly increased the other Plaintiffs chances of selection in the H-1B visa

ORDER - 4

lottery by submitting multiple cap registrations through related companies. *See generally* Dkts. ## 26-36.

Plaintiffs do not challenge USCIS's determination that their employers made willful misrepresentations during the H-1B lottery process. *See* Dkt. # 37. Instead, they contend that they were not given notice or otherwise provided with an opportunity to respond to the NOIRs. Dkt. # 8 at 36 ¶¶ 261–63. Plaintiffs say that USCIS "should have confronted them with derogatory information and allowed Plaintiffs to raise arguments and present facts regarding the provenance of the cap number revocation." *Id.* at 36 ¶ 263. The sole cause of action before the Court is whether DHS, through USCIS's actions, violated the APA by "arbitrarily, capriciously and unlawfully revok[ing] Plaintiffs' protected H-1B cap numbers under 8 U.S.C. § 1184(n)(1)." *Id.* at 35–36 ¶¶ 256–65.

Plaintiffs now move for summary judgment contending that DHS acted arbitrarily and capriciously by revoking Plaintiffs' H-1B cap numbers without evidence that they committed fraud or made willful misrepresentations. Dkt. # 37 at 13. They contend that a plain reading of Section 1184(g)(3) supports their argument that revoking a noncitizen's cap number for fraud or misrepresentation requires *the noncitizen* to have made the false communication or misrepresentation. *Id.* at 14. DHS cross-moves for summary judgment, contending that the agency was not required to find that Plaintiffs committed the fraud or made the misrepresentation before revoking their H-1B visas and cap numbers. Dkt. # 40 at 11.

## III
### DISCUSSION

A.   Standard of Review

When reviewing a challenge to an agency's decision brought under the APA, a court sets aside an agency's determination if it is "arbitrary, capricious, an abuse of discretion, or otherwise

ORDER - 5

not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The district court's review is generally limited to the administrative record. *U.S. Citrus Sci. Council v. U.S. Dep't of Agric.*, 312 F. Supp. 3d 884, 894 (E.D. Cal. 2018) (citing 5 U.S.C. § 706). Under this standard, "a reviewing court must determine whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Mt. St. Helens Mining & Recovery Ltd. P'ship v. United States*, 384 F.3d 721, 728 (9th Cir. 2004) (citing *Marsh v. Or. Nat. Res. Council,* 490 U.S. 360, 378 (1989)). This standard is "narrow" and "a court is not to substitute its judgment for that of the agency [.]" *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). The court determines "whether the agency articulated a rational connection between the facts and the choice made." *Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728 (citing *Ariz. Cattle Growers' Ass'n v. U.S. Fish and Wildlife*, 273 F.3d 1229, 1236 (9th Cir.2001)). The court also decides "'*all* relevant questions of law' arising on review of agency action [. . .] —even those involving ambiguous laws—and set[s] aside any such action inconsistent with the law as [the court] interpret[s] it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706) (emphasis in original). It "'remains the responsibility of the court to decide whether the law means what the agency says.'" *Id.* (quoting *Perez v. Mortg. Bankers Ass'n.*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment))).

Summary judgment is warranted when the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "genuine issues of material fact" standard that generally applies at the summary judgment stage seldom applies to an APA case. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769–70 (9th Cir. 1985). When reviewing an administrative decision, "the function of the district court is to determine whether or not as a matter of law the evidence

in the administrative record permitted the agency to make the decision it did." *Id.* at 769. "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* Lastly, because cross-motions for summary judgment are at issue, the Court will "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006).

B.      Revocation of Plaintiffs' Cap Numbers

Plaintiffs contend that DHS acted beyond its authority when it revoked Plaintiffs' H-1B visas and associated cap numbers. Dkt. # 37 at 13. They say that 8 U.S.C. Section 1184(g)(3) allows for revocation of H-1B cap numbers only when the *noncitizen* made the false communication to USCIS. *Id.* They also assert that 8 U.S.C. Section 1184(g)(3) references another statute, 8 U.S.C. Section 1182(a)(6)(C)(i) "which defines the sanction for fraud and willful misrepresentation committed by a[ ] [noncitizen]." *Id.* Plaintiffs argue that the only party who has an interest in the H-1B cap number is the noncitizen, and Congress intended that the cap number be revoked only when the noncitizen has committed "disqualifying conduct." *Id.*[4]

DHS responds that Plaintiffs' argument conflicts with the plain text of Section 1184(g)(3). Dkt. # 40 at 11. It says that the statute "focuses on issuance of the visa by the government as a result of fraud" and does not identify a specific fraud actor. *Id.* at 12. The

---

[4] Plaintiffs also seemingly argue that DHS should have provided them with notice prior to revoking their cap numbers. Dkt. # 37 at 15. Based on the record, USCIS provided Plaintiffs' employers with notice of the agency's intent to revoke and its decision to revoke Plaintiffs' H-1B visas and cap numbers. *See generally* Dkts. ## 26–36. But DHS points out that Plaintiffs' summary judgment briefing "provides no further argument on this point or any explanation as to the significance of such notice" to Plaintiffs. Dkt. # 40 at 17. Because Plaintiffs have failed to adequately develop this argument in their briefing, they have waived this argument. *See DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16, 2016) ("A party waives or abandons an argument at the summary judgment stage by failing to provide more than a passing remark in support of its position."); *see also United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997) (deeming a party's argument "abandoned" because it was not "coherently developed").

agency explains that a plain reading of the statute is that *someone* caused the government to issue the H-1B visa because of fraud or a willful misrepresentation of fact. *Id.* at 12. It asserts that the fraud could have been committed by the petitioner-employer or by the beneficiary-employee. *Id.* DHS also contends that Section 1184(g)(3) incorporates no other section by reference. *Id.* at 13. It states that there is no explicit reference to Section 1182(a)(6)(C)(i) in Section 1184(g)(3). *Id.* at 14. The agency also contends that Plaintiffs' reliance on Section 1182(a)(6)(C)(i) to limit the scope of Section 1184(g)(3) is misplaced given that a noncitizen's eligibility for an H-1B visa is based on a petition filed by the noncitizen's employer. *Id.* (citing 8 U.S.C. § 1184(c)(1)).

The Court disagrees with Plaintiffs' interpretation of Section 1184(g)(3). The statute provides,

> If a[] [noncitizen] who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) *is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked*, then one number shall be restored to the total number of [noncitizens] who may be issued visas or otherwise provided such status. . .

8 U.S.C. § 1184(g)(3) (emphasis added). The statute does not say that a cap number can *only* be revoked because of the noncitizen's fraud or misrepresentation. The statutory text centers on the issuance of an H-1B visa based on a fraudulent act or misrepresentation, not on the fraudulent actions or misrepresentation of any particular party. As DHS points out, the statute covers fraudulent acts or misrepresentations committed by the petitioner-employer *or* the beneficiary-employee. *See also Parcha v. Cuccinelli*, No. 4:20-CV-015-SDJ, 2020 WL 607103, at *9 (E.D. Tex. Feb. 7, 2020) (stating that the "plain language" of Section 1184(g)(3) "provides for revocation of a visa whenever it 'is found to have been issued' on the basis of fraud or willful misrepresentation without regard for which party committed the wrongful acts."); *Manney v. U.S. Dep't of Homeland Sec.*, 735 F. Supp. 3d 590, 600 (E.D. Pa. 2024) (reasoning that the

plaintiffs' interpretation of Section 1184(g)(3) would require the court to "read a word into the statute: nowhere does it specify that a cap number can *only* be revoked through an individual's own fraud or misrepresentation.") (emphasis in original).

Moreover, Section 1184(g)(3) does not incorporate Section 1182(a)(6)(C)(i) by reference. The statute does not cross-reference or otherwise mention Section 1182(a)(6)(C)(i). *See* 8 U.S.C. § 1184(g)(3). And the Court disagrees with Plaintiffs' contention that the two statutes are meant to be read together. Section 1182(a)(6)(C)(i) states that any noncitizen "who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is *inadmissible*." 8 U.S.C. § 1182 (a)(6)(C)(i) (emphasis added). When a noncitizen is rendered "inadmissible" this means that they cannot apply for a visa or otherwise be admitted into the United States. *See* 8 U.S.C. § 1182. The consequences of violating Section 1182 (a)(6)(C)(i) are more severe than the penalty of having an H-1B cap number revoked under Section 1184(g)(3). If a noncitizen's cap number is revoked, they can still obtain a new cap number in another fiscal year and are otherwise admissible into to the United States. The considerable difference in the consequences for violating Section 1182 (a)(6)(C)(i) as compared to Section 1184(g)(3) "undermines Plaintiffs' position because it shows that Congress recognized a distinction between situations where an employee is culpable and where the employee is blameless." *Manney*, 735 F. Supp. 3d at 600.

Further, Sharon Orise, the Adjudications Division Chief for the Service Center Operations Directorate USCIS, stated that USCIS's "records confirm that not a single Plaintiff in this case has been found inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) by USCIS or any agency within DHS." Dkt. # 31-1 at 5 (Dec. of Sharon Orise). USCIS has also not "found a single Plaintiff ineligible for the H-1B visa lottery." *Id.* Instead, based on "current information,

*there is nothing preventing the Plaintiffs from re-entering the H-1B lottery through a different company.*" *Id.* (emphasis added).  Thus, Plaintiffs would still be able to obtain new cap numbers through different employers and are not barred from entering the United States.

Plaintiffs also assert that DHS's revocation of their cap numbers violated the Eighth Amendment.  Dkt. # 41 at 1l.  Plaintiffs did not raise an Eight Amendment claim in either the Amended Complaint or their opening brief.  *See* Dkts. ## 8, 37.  The Court will not consider this new claim raised for the first time at the summary judgment stage.  *See Burrell v. Cnty. of Santa Clara*, No. 11–CV–04569–LHK, 2013 WL 2156374, at *11 (N.D. Cal. May 17, 2013) ("The [c]ourt will not consider claims raised for the first time at summary judgment which [the] [p]laintiffs did not raise in their pleadings.").  The Court also observes that the cases Plaintiffs cite in support of this constitutional argument concern the Excessive Fines Clause of the Eighth Amendment.  Dkt. # 41 at 11; *see United States v. Schwarzbaum*, 114 F.4th 1319, 1329 (11th Cir. 2024), *opinion vacated and superseded on reh'g*, 127 F.4th 259 (11th Cir. 2025) (analyzing whether monetary civil penalties levied against Schwarzbaum by the IRS violated the Excessive Fines Clause); *Johnson v. Becerra*, 674 F. Supp. 3d 949, 954–59 (D. Mont. 2023) (analyzing the imposition of civil fines under the Excessive Fines Clause).  No fines are at issue.

Based on the above, as a matter of law, DHS did not act arbitrarily and capriciously in revoking Plaintiffs' H-1B cap numbers because of their employers' misrepresentations during the registration process.[5]

---

[5] Separately, Plaintiffs also assert that "DHS bypassed notice and comment rulemaking to create an anti-collusion rule with authority to sanction employers." Dkt. # 37 at 20–22.  They say that DHS updated the H-1B registration website to include this anti-collusion rule without going through the notice-and-comment process. *Id.* at 20.  But as DHS points out, Plaintiffs brought no such claim in their Amended Complaint. Dkt. # 40 at 17.  Given that Plaintiffs failed to raise this claim in their Amended Complaint, *see generally* Dkt. # 8, the Court will not consider this new allegation asserted for the first time in a summary judgment motion. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (reasoning that when "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the

# IV

## CONCLUSION

For the above reasons, the Court DENIES Plaintiffs' motion for summary judgment, Dkt. # 37, and GRANTS DHS's cross-motion for summary judgment, Dkt. # 40. The Court DISMISSES Plaintiffs' claim with prejudice.

Dated this 10th day of March, 2025.

*John H. Chun*
John H. Chun
United States District Judge

---

district court"); *Wasco Products, Jhc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings").

ORDER - 11